UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MARVA BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-0342-RLY-DKL |
| | ) | |
| CITY OF INDIANAPOLIS- | ) | |
| DEPARTMENT OF PUBLIC WORKS, | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Marva Brown ("Plaintiff"), filed the present lawsuit against her former

employer, the City of Indianapolis – Department of Public Works ("City"), following her

termination for violating the City's policy which requires that all City employees reside

within Marion County.  Plaintiff's Complaint alleges that the City's termination of her

employment constituted: (1) discrimination on the basis of race in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; (2) a breach of the

City's collective bargaining agreement with the AFSCME Union Local 62, of which

Plaintiff was a member, because her termination was arbitrary and capricious and

constituted discrimination based on sex; (3) retaliation for making complaints to her

superiors regarding gender discrimination and harassment; and (4) retaliation for taking

leave from work pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29

U.S.C. § 2601 *et seq.*

1

The City filed the present motion for summary judgment on August 30, 2012. Plaintiff responded only with respect to her claim for race discrimination. In light of the City's arguments and evidence in support of their motion for summary judgment with respect to the balance of Plaintiff's claims, and in light of Plaintiff's failure to respond to those claims, the court concludes that Plaintiff cannot survive summary judgment on those claims. Accordingly, Defendant's motion is **GRANTED** with respect to her claims for: (1) breach of contract; (2) Title VII retaliation; and (3) FMLA retaliation.

Plaintiff's only remaining claim for race discrimination is premised on her allegation that Twana Ellis ("Ellis"), a City Human Resources Consultant, terminated her employment for racially motivated reasons. As shown below, the evidence in this case does not support her claim.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the movant has met that burden, the nonmoving party "must point to evidence in the record 'that would reasonably permit the finder of fact to find in her favor on a material question.'" *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 408 (7th Cir. 1994) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th

Cir. 1994)).   If the non-moving party fails to make this showing, then the moving party is

entitled to judgment as a matter of law.   *Celotex*, 477 U.S. at 323; *Cliff*, 42 F.3d at 409.

## II.   Background

Plaintiff, an African American female, began working for the City's Department of

Public Works ("DPW") on May 24, 2004, as a semi-skilled laborer.   (Defendant's Ex. C-

12; Deposition of Marva Brown ("Plaintiff Dep.") at 33-34).   Plaintiff received on that

same date an Employee Manual which she was required to read.   It provides, in relevant

part, "In accordance with the Revised Code of the Consolidated City and County, a

person accepting employment with the City must have his/her principal place of residence

in Marion County within six months of employment.   Failure to comply with this

requirement may result in discharge."   (Defendant's Ex. C-1 at 11; Defendant's Ex. C-2).

The Revised Code further provides that if a City employee moves out of Marion County,

the employee's employment "shall terminate six (6) months from the date that he moves

his principal place of residence from the county."   INDIANAPOLIS, IN, REV. CODE ¶ 291-

112 (2012).

In May 2010, Ellis received information that Plaintiff had moved her principal

place of residence outside of Marion County.   (Affidavit of Twana Ellis ("Ellis Aff.") ¶

6).   Ellis was assigned the task of investigating Plaintiff's residency to assess her

compliance with the City's residency requirement.   (*Id.* ¶ 7).   Ellis requested

documentation from Plaintiff, evaluated that documentation, and researched her property

records and homestead credit filings.   (*Id.* ¶¶ 13-17, 21).   Ellis also researched property

3

records for any and all properties deeded to Plaintiff.  (*Id.* ¶ 14).  Ellis located records

indicating that Plaintiff owned a house in Hancock County, Indiana, which had a

mortgage in Plaintiff's name.  (*Id.* ¶¶ 15-16).  Ellis also determined that Plaintiff had

filed for and been granted a Homestead Tax Credit on her property in Hancock County,

Indiana.  (*Id.* ¶ 17).

As a result of Ellis' investigation, a pre-disciplinary meeting was held on July 28,

2010, to discuss Plaintiff's residency.  (Defendant's Ex. C-4).  Ellis, Plaintiff, Manager

Evan Kimble, and Union Steward Nicholas Boulse were present.  (*Id.*).  Ellis requested

that Plaintiff provide documentation regarding her residency.  (Ellis Aff. ¶ 19).  On that

same date, Plaintiff sent a facsimile to Ellis with the following documents:

- a photocopy of an Indianapolis Power and Light bill dated July 8, 2010, in Plaintiff's name for property at 5217 Thornleigh Drive, Indianapolis, Indiana, 46226;

- a photocopy of a handwritten envelope from Community Physicians of Indiana dated June 15, 2010, addressed to Plaintiff at 5217 E. Fornley, Indianapolis, Indiana, 46226;

- a photocopy of two receipts for $50 in rent from a Raymond Shoemake, dated July 1, 2009, and July 10, 2010, respectively;

- a photocopy of an Indiana Residential Lease Agreement dated July 1, 2009, between a Raymond Shoemake, as landlord, and Marva I. Brown, as tenant, for a term listed as "indefinite."

(Defendant's Ex. C-5).  Ellis evaluated the documentation Plaintiff provided and

determined that it was insufficient to prove that Plaintiff resided in Marion County.  (Ellis

Aff. ¶ 26).

On July 29, 2010, a second meeting was held with the same parties present. (Defendant's Ex. C-6).  Ellis presented Plaintiff with her findings that Plaintiff did not maintain her principal residence inside the Marion County limits in violation of City policy and the Revised Code.  (Ellis Aff. ¶ 29).  Ellis gave Plaintiff the option to resign or accept termination.  (*Id*.).  Ellis refused to resign, and as a result, her employment was terminated.  (*Id*. ¶¶ 30-31).

All other facts necessary for determination of this matter will be discussed in the following section.

## III.   Discussion

Plaintiff's race discrimination claim is brought under the familiar *McDonnell Douglas* burden-shifting framework.  This requires Plaintiff to establish that: (1) she is a member of a protected class; (2) she was meeting the City's employment expectations; (3) she suffered an adverse employment action; and (4) a similarly situated co-worker who is not a member of the protected class was treated more favorably.  *Luster v. Ill. Dep't of Corrections*, 652 F.3d 726, 730 (7th Cir. 2011). Only one of the four elements of Plaintiff's prima facie case is in dispute – whether similarly-situated employees of a different race were treated more favorably than she.

Employees are similarly situated if they are "directly comparable to her in all material respects."  *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).  "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct

5

without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). The similarly situated inquiry is "a flexible one that considers 'all relevant factors, the number of which depends on the context of the case.'" *Humphries v. CBOS West, Inc*., 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue*, 219 F.3d at 617). A plaintiff need not show complete identity with a proposed comparator, but she must show "'substantial similarity.'" *Id*. (quoting *Radue*, 219 F.3d at 618).

Plaintiff contends that Caucasian DPW employees Leonard Addair ("Addair") and Spencer DeVaney ("DeVaney"), and Caucasian employees identified as Ted Folck, Kenneth Banholzer, Jerry Campbell, and Mitch Keener, have residences outside of Marion County, but have not been terminated.

### A.    Addair

Addair is employed by the DPW as the Assistant Administrator of Operations, and has held that position for twelve years. (Deposition of Leonard Addair ("Addair Dep.") at 8-9). Addair testified that he has lived in his uncle's Marion County home for approximately ten years; in exchange, Addair pays rent to his uncle and pays the gas bill. (*Id*. at 3-4). He explained that he built a house for his wife and children at 6657 Laurel Court, Mooresville, Indiana, Morgan County, in 2005 or 2006, but that he has never lived there. (*Id*. at 11-12). The two are separated, but not divorced. (*Id*. at 13).

In October 2011, Plaintiff submitted information to the City which indicated that Addair lived outside of Marion County. (Ellis Dep. at 36-37). Ellis investigated Addair's

6

residency.  (*Id*. at 37).  Ellis determined that Addair's name was on the homestead credit

for the Morgan County home. (*Id*. at 37).  Ellis confronted Addair with that evidence.

(*Id*.).  Addair informed Ellis that he did not live in the home, and that it was built for his

wife and children.  (*Id*.).  Addair provided Ellis with tax forms, utility bills, a driver's

license, and an "affidavit or a statement" from his uncle which all reflected that Addair

lived at the Marion County home owned by his uncle.  (*Id*. at 40).  Addair was not

terminated.  (Plaintiff's Ex. H-2 at 15).

Addair is not similarly-situated to Plaintiff.  He has held an administrative-level

position for twelve years; Plaintiff has held a semi-skilled laborer position for six years.

More significantly, unlike Plaintiff, Addair submitted competent evidence to substantiate

the fact that his primary residence was in Marion County, notwithstanding any property

he owned or may have owned in another county.

### B.    DeVaney

DeVaney currently works in DPW's Streets Division, but at all times relevant to

this lawsuit, he was an employee in the Forestry Division for the City's Department of

Parks and Recreation.  (Deposition of Spencer DeVaney ("DeVaney Dep." at 7-8)).

DeVaney testified that he has been separated from his wife for over ten years.  (*Id*.

at 8-10).  DeVaney purchased a home located at 5076 Braemar, Avon, Indiana, Hendricks

County, for her and their two children approximately eight years ago, and his name

appears on the title and mortgage to the property.  (*Id*. at 10).  In 2004, Elizabeth Terry

("Terry") from the City's Human Resources Department sent a letter to DeVaney at the

Hendricks County address, requesting proof of residency.  (*Id*. at 12-14).  DeVaney testified that he provided a valid lease related to his rental of and residence in Marion County in 2004, at 5901 Westhaven Drive.  (*Id*. at 14).  DeVaney was not terminated.  (*Id*.).

DeVaney is not similarly situated to Plaintiff.  DeVaney held a different position; a different decision-maker, Terry, investigated DeVaney's residency; and DeVaney, unlike Plaintiff, provided a valid lease agreement related to his rental at 5901 Westhaven Drive.

In 2009, the City investigated DeVaney's residency again.  (*Id*. at 15).  DeVaney was terminated for violating the policy at that time.  (*Id*.).  According to DeVaney's termination notice, DeVaney's father had told investigators that DeVaney lived at the Hendricks County address, and had resided there for approximately five years.  (Plaintiff's Ex. G, Ex. 4).  DeVaney was reinstated several months later after a proceeding involving the AFSCME Union, in which it was revealed that the two investigators were mistaken about DeVaney's residency.  (*Id*. at 17-18).

Further, as part of the Union grievance process, Christine DeVaney, DeVaney's estranged wife, submitted a sworn, notarized statement reflecting that DeVaney did not reside in Hendricks County with her and the children.  (Defendant's Ex. I).  The Union also produced to the City a sworn statement from Angela Hamer stating that she leased a room to DeVaney in Marion County at the time in question.  (Defendant's Ex. J).  Throughout the investigation, termination, and reinstatement, DeVaney continued to receive mail from the City at his Marion County address, 3676 Galburgh Court.

8

(DeVaney Dep. at 18).

With respect to this second investigation, DeVaney is not similarly situated to Plaintiff.  Indeed, he was actually terminated in 2009 for what the City believed to be a violation of the residency requirement.  Although Plaintiff, like DeVaney, filed a grievance, DeVaney submitted additional proof that his primary residence was in Marion County.  Plaintiff did not.  (Defendant's Ex. C-7).

### C.    Other Caucasian Employees

Plaintiff also identified "other Caucasian employees" Ted Folck, Kenneth Banholzer, Jerry Campbell, and Mitch Keener in her Request for Admissions, as individuals who worked for the City but did not reside in Marion County.  Per the City's Response to Request No. 11, Ellis denied that the employees lived outside of Marion County based on the information in the respective employee's personnel file.  (Plaintiff's Ex. H-1).  Plaintiff complains that Ellis did not perform an more in-depth investigation, such as check to see if the employees had a homestead credit in another county.

It is Plaintiff's burden to prove that similarly situated individuals outside of the protected class were treated differently with regard to the application of the City's residency policy.  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939-40 (7th Cir. 2003).  The City answered her Request based upon the records contained in its employee files.  The City was not required to investigate and verify the addresses listed in its personnel files to help her prove her case.  Thus, the evidence of record before the court shows that these individuals did not violate the City's residency policy.  Accordingly, they are not

9

similarly situated to Plaintiff.

Plaintiff has not raised a genuine issue of material fact that she was treated differently than similarly situated City employees of a different race. Her failure to establish a prima facie case dooms her claim for race discrimination. *Luster*, 652 F.3d at 732.

### D. Final Note

As a final note, the court would be remiss not to mention Plaintiff's deposition testimony regarding the Thornleigh address. According to Plaintiff, she rented a room for $50 a month from her god-brother, Shoemake, so that she would have a "Marion County residence . . . should the need arise." (Plaintiff Dep. at 57-60). The room had only a bed; she did not sleep there, and did not keep any clothes "or anything like that" there. (*Id*. at 57). She typically went to that address on Sunday to pick up a utility bill. (*Id*. at 57-58). She otherwise resided in her house in McCordsville, which she purchased in December 2007, and moved into a month or so later. (*Id*. at 60-61). Ellis was correct; Plaintiff had a homestead exemption at the McCordsville residence. (*Id*. at 58). Although this evidence is not relevant with regard to Ellis' investigation into Plaintiff's residency because Plaintiff did not admit these facts to her at that time, Plaintiff's testimony does lend credence to Ellis' belief that Plaintiff was not a Marion County resident at the time of her termination. In other words, the City's proffered non-discriminatory reason for Plaintiff's termination was based in fact.

### V. Conclusion

10

For the reasons set forth above, the court **GRANTS** the City's Motion for

Summary Judgment (Docket # 59).


**SO ORDERED** this 3rd day of January 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

11